# IN THE COURT OF APPEALS OF IOWA

No. 16-0086
Filed January 11, 2017

IN THE MATTER OF T.J.,
Alleged to Be Seriously Mentally Impaired,

T.J.,
    Respondent-Appellant.

_____

Appeal from the Iowa District Court for Lucas County, Martha L. Mertz, Judge.

T.J. appeals from the district court's order finding him to be seriously mentally impaired. **REVERSED.**

John C. Audlehelm of Audlehelm Law Office, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Gretchen W. Kraemer, Assistant Attorney General, for appellee State.

Considered by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**VAITHESWARAN, Judge.**

A magistrate found T.J. seriously mentally impaired and ordered him committed for inpatient treatment and, subsequently, for outpatient treatment. T.J. appealed the order to the district court, which affirmed the magistrate's decision following an evidentiary hearing. The court ordered T.J. to "remain[] under an out-patient commitment until further order." On appeal, T.J. challenges the sufficiency of the evidence supporting the district court's finding of a "serious mental impairment."

Iowa Code section 229.1 (2016) defines "seriously mentally impaired" as follows:

> "Seriously mentally impaired" or "serious mental impairment" describes the condition of a person with mental illness and because of that illness lacks sufficient judgment to make responsible decisions with respect to the person's hospitalization or treatment, and who because of that illness meets any of the following criteria:
> a. Is likely to physically injure the person's self or others if allowed to remain at liberty without treatment.
> b. Is likely to inflict serious emotional injury on members of the person's family or others who lack reasonable opportunity to avoid contact with the person with mental illness if the person with mental illness is allowed to remain at liberty without treatment.
> c. Is unable to satisfy the person's needs for nourishment, clothing, essential medical care, or shelter so that it is likely that the person will suffer physical injury, physical debilitation, or death.

Iowa Code § 229.1(20). This definition contains three elements: (1) mental illness, (2) lack of sufficient judgment, and (3) the criteria labeled (a), (b), and (c), which encompass the threshold requirement of dangerousness. *See In re Oseing*, 296 N.W.2d 797, 800-01 (Iowa 1980) (analyzing predecessor statute). "[T]he elements of serious mental impairment must be established by clear and convincing evidence and the district court's findings of fact are binding on us if

supported by substantial evidence." *In re J.P.*, 574 N.W.2d 340, 342 (Iowa 1998); *accord In re B.B.*, 826 N.W.2d 425, 428, 432 (Iowa 2013).

T.J. argues the record lacks substantial evidence to support a finding of a mental illness. He notes that the psychiatrist who testified at the district court hearing failed to include a formal diagnosis in his report. The report, completed on a form titled "Physician's Report of Examination pursuant to 229.10(2)," was left blank under the question "state diagnosis and support observations or medical history."

The psychiatrist acknowledged he forgot to specify the diagnosis under this particular question. But he listed the diagnosis in the next question as "delusional [disorder] persecutory type." At the district court hearing, he testified to independently diagnosing T.J. with this condition after observing him for several days.[1] He characterized the disorder as "similar to schizophrenia" but without all the symptoms. The report constitutes substantial evidence in support of a finding of mental illness.

We turn to the question of whether T.J. had sufficient judgment to make responsible decisions. The psychiatrist answered "no" to this question, citing T.J.'s "poor compliance and limited insight." He stated, "[T]here is a big chance for him to stop his meds and not follow up." At the hearing, the psychiatrist affirmed this answer. The report constitutes substantial evidence in support of a finding that T.J. lacked sufficient judgment to make responsible decisions.

---

[1] The original commitment order was based on a report filed by another physician. The physician who testified at the district court hearing and the earlier commitment hearing worked with the other physician.

We are left with the element of dangerousness. As noted, this element implicates the three statutory criteria set forth in Iowa Code section 229.1(20)(a), (b) and (c). The threat the patient poses must be evidenced by a "recent overt act, attempt or threat." *In re Mohr*, 383 N.W.2d 539, 542 (Iowa 1986).

The psychiatrist reported that, in his judgment, it was "hard to determine" whether T.J. was likely to physically injure himself or others. He stated T.J. could be released to the custody of a relative or friend without danger to himself or others and, indeed, would "most likely" be discharged the following day. In response to the question whether T.J. was likely to inflict severe emotional injury on those who could not avoid contact with him, he responded "this is still possible but [on] his medication, he has shown better behavior and social interactions." Finally, he reported T.J. could be treated on an outpatient basis because there was "no suicidality or homicidality at this point" and he was "able to take care of his [activities of daily living.]"

The psychiatrist reaffirmed these opinions at the district court hearing. He stated, T.J. "is not a danger to himself. He is not suicidal or homicidal, but . . . it doesn't mean that he will take his medications or go to his appointments." This evidence does not amount to substantial evidence in support of a finding of dangerousness.

The State asks us to consider family affidavits proffered at the time of the initial commitment. Those affidavits and the acts attested to in them were not recent enough to establish that T.J. was a danger to himself or others at the time of his commitment hearing. *See In re Foster*, 426 N.W.2d 374, 378 (Iowa 1988) ("In the context of civil commitment, . . . an 'overt act' connotes past aggressive

behavior or threats by the respondent manifesting the probable commission of a dangerous act upon himself or others that is likely to result in physical injury."); *In re S.S.*, No. 15-0494, 2015 WL 6508809, at *5 (Iowa Ct. App. Oct. 28, 2015) ("Although the doctor noted S.S. got 'into arguments with family members' and 'seem[ed] to be having significant difficulties with family members,' there is nothing to connote the arguments to be evidence of aggressive behavior or threats manifesting the probable commission of a dangerous act upon others that is likely to result in physical injury."); *In re S.A.M.*, No. 04-0763, 2005 WL 292217, at *3 (Iowa Ct. App. Feb. 9, 2005) ("S.A.M.'s weight in December of 2003 cannot reasonably be considered to be a recent overt act showing that she was a danger to herself at the time her commitment hearing was held in April 2004.").

The only other evidence that arguably could reflect dangerousness is a reference to pending charges against T.J. on which he was jailed. However, the record does not tell us why he was jailed and whether violence was involved.

Because dangerousness was not proved, we reverse the civil commitment order.

**REVERSED.**